IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| LISA L. PETER, | |
| Plaintiff, | 4:12-CV-3169 |
| vs. | MEMORANDUM AND ORDER |
| CITY OF YORK, NEBRASKA, | |
| Defendant. | |

    This matter is before the Court on the City of York's motion for summary judgment (filing 31). In a previous Memorandum and Order on summary judgment (filing 38), the Court granted the City's motion with respect to the plaintiff's Americans with Disabilities Act (ADA) claim, but directed the parties to provide additional briefing with respect to the Title VII claim. For the reasons stated below, the Court will now deny the City's motion for summary judgment on the plaintiff's Title VII claim.

## BACKGROUND

    The background and evidence initially presented in support of and opposition to the City's motion is summarized in the Court's previous order, *see* filing 38 at 1-4, and need not be restated here. It suffices to recall that the plaintiff, Lisa Peter, lost her job as a firefighter and paramedic for the City as the result of an injury she suffered in May 2010, and she claims the City violated Title VII by treating her injury differently than it had previously treated the illness of a male firefighter, Mike Steube. As relevant, Peter claimed Steube was offered light duty and a reduced work schedule, which allowed him to extend the leave available to him as part of his employment and pursuant to the Family and Medical Leave Act (FMLA) until he was healthy enough to return to full-time employment. But the City refused to allow Peter to reduce her work schedule or provide Peter with light duty, and her accrued sick leave and FMLA leave ran out before Peter was recovered from her injury, so she was terminated. *See* filing 2 at 9-13.

    In its previous Memorandum and Order, the Court found sufficient evidence in the record to establish Peter's prima facie case under Title VII, and to support a finding that the City's proffered reasons for treating Peter and Steube differently were pretextual. Filing 38 at 5-8. But the Court was unable to discern, from the evidence, how that differential treatment caused

Peter's termination. Filing 38 at 8-9. Peter claimed that she would not have run out of leave absent the differential treatment. She claimed that, had she been given the same accommodations as Steube, "her weeks for available leave would have been nearly doubled and she would have been accruing leave time during her period of recuperation[,]" so "she would have been able to return to work and would not have been fired." Filing 36 at 15.

But as explained in the Court's previous Memorandum and Order, Peter's available FMLA leave would not have been meaningfully extended had her workweek been shortened as Steube's had been. Filing 38 at 8. And the Court was having some difficulty seeing how Peter could have extended her available leave from October 3, 2010 (the date of her termination) all the way to January 16, 2012 (when her doctor finally cleared her to work without restrictions). Filing 38 at 8. So, the Court wrote,

> it appears from the evidence before the Court that even had Peter received the same accommodations as Steube from the start, she would still have run short of leave before she could return to work without restrictions. And if that is the case, then the adverse employment action—her termination—would have been inevitable.

Filing 38 at 9. But that issue had not been raised by the City, so the Court directed the parties to brief the issue of causation. Filing 38 at 9, 12.

## ANALYSIS

The parties' subsequent briefing and evidence has served to focus the issues before the Court. Peter, for her part, does not seem to dispute the Court's suggestion that she would have been unable to make her leave hours last until January 16, 2012. Instead, she has submitted evidence that, according to her, shows that she could actually have begun working light duty on July 10, 2010, and returned to full duty on November 1, 2010—and her leave hours, according to her calculations, would have lasted that long. The City, for its part, does not disagree with Peter's math as to whether she could have made her leave last until November 1. Rather, the City has objected to Peter's evidence. And, according to the City, the evidence does not show that Peter could actually have returned to work when she claimed.

So, the parties have presented two questions to the Court: (1) is Peter's evidence admissible, and (2) does the evidence establish a genuine issue of material fact as to when Peter could have returned to work? The Court finds that the answer to both questions is "yes."

EVIDENTIARY OBJECTIONS

The Court begins with the evidentiary question.[1] Peter's key piece of evidence is an affidavit from her physical therapist, Brett I. Smith, P.T., D.P.T., A.T.C. Smith is also a volunteer firefighter for the City, and drafted the physical fitness examination for the City's firefighters. So, Smith avers, he is "very familiar with the job duties and physical requirements for firefighters in the State of Nebraska." Filing 39-3 at 1. Smith authored an opinion letter in which he stated that Peter could have safely returned to light duty on July 1, 2010, with certain restrictions, and could have returned to full duty without restriction on November 1. Filing 39-3 at 3.

The City complains that Smith's affidavit is "irrelevant, unfairly prejudicial, likely to confuse, speculative, and remote in time." Filing 44 at 2, 3. So, the City contends, the affidavit is "inadmissible and should not be considered by the Court." Filing 44 at 2.

To begin with, the City claims that Smith's evidence is irrelevant because if a fitness-for-duty certification is requested by an employer pursuant to the FMLA, it must come from the employee's "health care provider," the definition of which does not include a physical therapist. *See* 29 C.F.R. §§ 825.125 and 825.312. So, the City says, Smith's opinion is irrelevant because he could not have cleared Peter for duty under the FMLA. Filing 44 at 3-4.

The City's argument fails for two reasons. First, the FMLA does not *require* an employee who has taken FMLA leave to be certified as fit for duty—it only permits an employer, under certain circumstances, to demand such a certification. *See* 29 C.F.R. § 825.312. The City does not contend that its policy was (or would have been) to require that Peter be certified as fit for duty in the manner specified by the FMLA—that is to say, the City could have accepted a certification from Smith had it wanted to.[2] But more broadly, the question is not whether Smith's letter, had it been authored in 2010, would have sufficed to clear Peter for duty. Fed. R. Evid. 401(a) only requires that evidence have "any tendency to make a fact more or less probable than it

---

[1] Peter argues that the City's evidentiary objection is "not properly before the Court" because the City "has failed to file a motion to strike or motion in limine." Filing 50 at 1. On that point, Peter's argument is without merit: Fed. R. Civ. P. 56(c)(2) clearly provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." *See Gannon Int'l, Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012). It is equally clear that "[t]here is no need to make a separate motion to strike." Rule 56 advisory committee's note.

[2] Peter also argues that Steube was not required to complete a fitness-for-duty test before he returned to work. The record is far from clear on that point. *See*, filing 32-4 at 8-9; filing 32-5 at 13-15.

would be without the evidence." Smith's opinion, based on his regular treatment of Peter during the relevant time period and his expertise, makes it more likely that Peter was fit for duty before she would have run out of leave hours. And that, for purposes of relevancy, is all that is required.

The City also contends that Smith's opinion is irrelevant because it is remote in time. Filing 44 at 4. But the case relied upon by the City, *Gulbranson v. Duluth, Missabe and Iron Range Ry. Co.*, 921 F.2d 139 (8th Cir. 1990), is plainly distinguishable. In *Gulbranson*, the issue was whether the minutes of a railway safety board meeting indicating the railway's awareness of a safety risk on April 10, 1985, were probative of the railway's knowledge of the problem on July 20, 1984, when an accident had occurred. *Id.* at 142. The Eighth Circuit found they were not. *Id.* But certainly, had the evidence from 1985 at issue in *Gulbranson* been *about what was known in 1984*, the result would have been different. Similarly, Peter is not trying to use Smith's treatment notes from 2013 as evidence of Peter's condition in 2010. Rather, Smith is opining, based on his notes and recollection from 2010, about Peter's condition in 2010. That is an appropriate subject for opinion testimony.

Finally, the City contends that Smith's opinion is irrelevant because it was not provided to the City during 2010, when Peter was (according to Smith) fit for duty. Filing 44 at 4-5. But there was no reason for Peter to solicit an opinion that she was fit for light duty in July 2010, because she had been told in June 2010 that light duty was unavailable. Filing 35-1 at 27. And there was no reason for Peter to obtain an opinion that she was fit for duty in November 2010, because she had been fired in October 2010. Filing 33 at 10-11. Peter does not claim that the City unlawfully fired her because she was actually fit for duty, but the City incorrectly said she was not. Rather, she claims that the City unlawfully discriminated against her by not accommodating her injury to extend her available leave until she was fit for duty. The medical evidence available to the City at the time simply has nothing to do with its alleged acts of discrimination.

In addition to its Rule 401 argument, the City objects to Smith's opinion based on Fed. R. Evid. 403, asserting that the evidence is "inadmissible because it is unfairly prejudicial, likely to confuse or mislead, and speculative." Filing 44 at 5. But there is nothing to suggest that the evidence would be *unfairly* prejudicial. The City contends that the evidence might confuse the fact-finder "regarding whether Smith actually gave these restrictions" at the time. Filing 44 at 5. The Court is confident that the City's counsel could, at trial, avert any such confusion by appropriate cross-examination. And the City argues that the evidence is "speculative because there is no indication Smith came to these opinions at the time" he was

4

actually treating Peter. Filing 44 at 5. But it would be peculiar to read Rule 403 to exclude opinion testimony simply because it was rendered after the fact—that is the nature of most opinion testimony. Simply put, there is no basis for excluding Smith's opinion from evidence.

GENUINE ISSUE OF FACT

The City argues that even if Smith's opinion is admissible, the Court should instead rely on evidence that Peter was not *actually* cleared for light duty until September 24, 2010, and for unrestricted duty until January 16, 2012. Those were the dates upon which Dr. Douglas Koch, who had operated on Peter's fractured ankle,³ released her to work. Filing 33 at 11; filing 35-1 at 55. Smith's opinion, according to the City, "certainly is not as reliable or probative as the restrictions set forth by Dr. Koch, which were actually made at the time [Peter] was rehabilitating and were actually provided to the City." Filing 44 at 5-6.

And that may or may not be—but it is a question for the trier of fact, not for summary judgment. *Reynolds v. Phillips & Temro Indus., Inc.*, 195 F.3d 411 (8th Cir. 1999), relied upon by the City, is not to the contrary. In that case, the plaintiff's doctor opined that the plaintiff could not return to work without restrictions, and the plaintiff's employer relied upon that opinion in refusing to permit the plaintiff to return to his old job. *Id.* at 414. But the plaintiff later contended that contrary to his doctor's opinion at the time, he could actually have returned to work. *Id.* The Eighth Circuit found that the plaintiff's disagreement with his doctor's recommendation did not create a genuine issue of material of fact with respect to whether he could have performed the essential functions of his job. *Id.*

In this case, however, Peter has presented contrary opinion testimony from a qualified witness, not just her own testimony. And more importantly, there is nothing in Peter's argument, or Smith's opinion, that contradicts Koch's opinion. Koch opined that Peter could only work with restrictions as of September 24, 2010, and Peter does not contend otherwise. Koch opined that Peter could work full time as of January 16, 2012, and Peter does not disagree with that either. Koch rendered those opinions when he was asked to do so, and nothing about Koch's opinion as of those dates precludes Smith's opinion that Peter could have been cleared for duty earlier, had the City accommodated her as she contends it should have.

The problem with the City's argument is that its actions in 2010 were not taken in reliance on Koch's opinion. The City did not refuse to provide Peter with light duty because it was told she was medically unfit for it: the

---

³ Although the parties' initial briefing agreed Peter had injured her heel, the evidence now before the Court suggests an ankle injury. *Compare* filing 33 at 11, *with* filing 48-1 at 4.

City refused to provide Peter with light duty because, according to the City, no light duty was available. Peter was fired in October 2010 because she could not return to unrestricted duty—but she does not contend otherwise. She simply contends that had she been treated the same as Steube, her leave would have lasted until she *could* return to unrestricted work. Koch's opinion, even if credited, does not preclude that argument.

Finally, the City belatedly submitted medical records from Smith's treatment of Peter that the City believes to undermine the credibility of Smith's opinion. *See*, filing 47; filing 48-1. That evidence does give the Court some pause: as the City points out, Smith first evaluated Peter on August 2, 2010—a month after the date upon which Smith now opines that Peter could have returned to light duty. Filing 48-1 at 4. And on December 2, 2010—a month after Smith now says Peter could have been cleared for unrestricted duty—Peter had significant swelling and was back in a medical walking boot. Filing 48-1 at 18.

But while these notes might provide significant fodder for cross-examination, the Court is unwilling to conclude that they warrant judgment as a matter of law. The fact that Peter's recovery suffered a setback in December 2010 does not change the fact that according to Smith's notes, in early November, she was ambulating in lace-up boots, and the discomfort and stiffness she reported in the ankle was "at the end of the day." Filing 48-1 at 17. Perhaps Peter could have returned to work on November 1—albeit with some discomfort—or perhaps not. But this is precisely the type of question that a jury should answer, after full consideration of properly adduced evidence. And a jury will do so.

IT IS ORDERED:

1. The City's motion for summary judgment (filing 31) is denied with respect to Peter's Title VII claim.

2. This matter is referred to the United States Magistrate Judge for case progression.

Dated this 31st day of March, 2014.

BY THE COURT:

John M. Gerrard
United States District Judge

7